UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civil No. 07-4101 MJD/FLN

Dezeray M. Roblero-Barrios,

Plaintiff,

v.                                    **REPORT AND RECOMMENDATION**

Cal Ludeman, Jack Erskine, Michael Tessneer,
Dave Pingry, et al.,
                     Defendants.

_____

FRANKLIN L. NOEL, United States Magistrate Judge

THIS MATTER came before the undersigned United States Magistrate Judge on

Defendants Ludeman, Erskine, Tessneer, and Pingry's motion to dismiss[1] [#22] [hereafter "the

DHS Defendants"].  The matter was referred to the undersigned for Report and Recommendation

pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons which follow, this Court

recommends that the DHS Defendants' motion be granted; the remainder of the federal claims be

dismissed pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii); and that the Court decline to

exercise supplemental jurisdiction over Plaintiff's state law claims.

---

[1] Plaintiff's Amended Complaint must also be screened pursuant to the Prison Litigation
Reform Act ( "PLRA"), 28 U.S.C. § 1915A.  The statute requires federal courts to screen the
pleadings in every civil action brought by a prisoner against governmental entities or employees
before docketing or as soon as practicable after docketing. 28 U.S.C. §1915A(a).  Plaintiff's
complaint falls under the PLRA because he was a pretrial detainee when he filed.  On review, the
Court must identify cognizable claims, or dismiss the complaint, or any portion of the complaint
that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if the
complaint seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §
1915A(b)(1, 2).  The standard of review for failure to state a claim under § 1915(A) is the same
as the standard of review used in assessing a motion to dismiss pursuant to Fed. R. Civ. P.
12(b)(6).  Shidler v. Moore, 409 F.Supp.2d 1060, 1064 (N.D.Ind. 2006).

## I.    FINDINGS OF FACT

Plaintiff Dezeray M. Roblero-Barrios[2] brought this action and filed an amended complaint on October 18, 2007, against Defendants Cal Ludeman, Michael Tessneer, Jack Erskine, Dave Pingry, and various John and Jane Does in their official and individual capacities, alleging violations of his civil rights pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, and common law negligence. (See Am. Compl.) The John and Jane Does have not been identified or served. Plaintiff seeks damages, declaratory judgment, and injunctive relief. Plaintiff's claims arise from two slip and fall incidents that occurred while he was housed at MSH-Moose Lake. (See Am. Compl.)

Plaintiff alleges he was a patient at MSH-Moose Lake during all relevant times of the complaint, but was a pretrial detainee at the Washington County Jail when he filed this action. (Am. Compl. ¶ 3.) Defendant Cal Ludeman is the Commissioner of the Department of Human Services ("DHS"). (Am. Compl. ¶ 4.) Defendant Michael Tessneer is the Director of State Operated Services within the Department of Human Services. (Am. Compl. ¶ 5.) Defendant Dave Pingry was the Site Director at MSH-Moose Lake, but is no longer employed in that position. (Am. Compl. ¶ 6.) There are two groups of John and Jane Doe Defendants. The first John and Jane Does are unknown medical persons employed at Mercy Hospital.[3] (Am. Compl. ¶ 8.) The second John and Jane Does are unknown security counselors and nursing staff at MSH-

---

[2] According to the DHS Defendants, Dezeray M. Roblero-Barrios was formerly known as Wesley Mullins, but legally changed his name on June 14, 2006. Defendants' Memorandum of Law in Support of Motion to Dismiss, p. 1, n.1.

[3] The Court will refer to these defendants as the "Mercy Hospital Doe Defendants."

Moose Lake.[4]  (Am. Compl. ¶ 9.)  Plaintiff alleges all defendants acted under color of state law. (Am. Compl. ¶ 10.)

Plaintiff alleges that on or about June 21, 2006, he left his room to get his medications and slipped and fell on a wet floor, which was not marked by a wet floor sign, and dislocated his knee.  (Am. Compl. ¶ 11.)  Plaintiff alleges Defendants John and Jane Doe ran out to see if he was all right, and Jane Doe called for additional help.  (Am. Compl. ¶¶ 12, 13.)  Nurse Doe responded to the call, diagnosed Plaintiff with a dislocated right patella, and determined that he should go to Mercy Hospital by ambulance.  (Am. Compl. ¶ 14.)  Plaintiff alleges he started going into shock while being transported to the hospital.  (Am. Compl. ¶ 14.)

Plaintiff alleges that "Dr. Doe" examined him in the Mercy Hospital emergency room, ordered X-rays, and diagnosed dislocated right patella.  (Am. Compl. ¶ 15.)  Plaintiff alleges Dr. Doe put Plaintiff's knee in place, gave him a knee brace, excused him from work, confined him to a wheelchair until he could see an orthopedic specialist, and released him back to Moose Lake.  (Am. Compl. ¶ 15.)  At Moose Lake, Plaintiff requested a wheelchair accessible room from "John and Jane Does," but was denied.  (Am. Compl. ¶ 16.)  As a result, he had to park his wheelchair outside his room and walk five to ten feet to his bed, causing excruciating pain.  (Am. Compl. ¶ 16.)  Plaintiff further alleges that he was forced to share his wheelchair with another patient.  (Am. Compl. ¶ 19.)

Plaintiff alleges he was not seen by Orthopedic Specialist "John Doe" until one and half months later, at which time the specialist continued his work restrictions and confinement in a wheelchair, which resulted in Plaintiff missing approximately three months of work, six hours a

---

[4]  The Court will refer to these defendants as the "Moose Lake Doe Defendants."

week at $6.15 per hour.  (Am. Compl. ¶ 17.)  Defendants, identified by Plaintiff as "SC"

borrowed his wheelchair and did not return it, forcing Plaintiff to walk 500 feet to get it, or have

another patient bring it to him.  (Am. Compl. ¶ 19.)    Plaintiff's work restrictions and wheelchair

confinement ended on approximately August 21, 2006.  (Am. Compl. ¶ 18.)  He returned to his

job, which required him to climb ten steps to sweep and mop the floor, causing him excruciating

pain.  (Am. Compl. ¶ 20.)  When retrieving wet floor signs, he slipped and fell and dislocated his

right knee again.  (Am. Compl. ¶ 21.)  He was sent to Mercy Hospital.  (Am. Compl. ¶ 22.)

Plaintiff was examined at Mercy Hospital by "Dr. Jane Doe" who diagnosed a dislocated patella,

excused him from work, ordered him confined to a wheelchair if he was unable to use crutches,

and released him back to Moose Lake.  (Am. Compl. ¶ 23.)

        Plaintiff alleges he was placed in full leg restraints for transport from the hospital to

Moose Lake, and when trying to enter the van he fell to the floor, putting a gash in his elbow and

landing on his injured patella.  (Am. Compl. ¶ 24.)  Plaintiff alleges the transport team then

removed the shackles and laughed.  (Am. Compl. ¶ 24.)  At Moose Lake, Plaintiff alleges he was

provided a very small wheelchair, and a room that would not accommodate it.  (Am. Compl. ¶

25.)  Plaintiff alleges "Nurse Doe" instructed him to walk behind the wheelchair.  (Am. Compl. ¶

25.)

        For his legal claims, Plaintiff alleges Moose Lake is obligated under the Americans with

Disabilities Act to provide necessary accommodations to handicapped persons, and failed to do

so by not having sufficient accommodations.  He alleges Nurse Doe violated his Eighth

Amendment rights by not complying with Dr. Doe's medical orders.  Plaintiff alleges

"Defendant Does" contributed to his injuries by placing him in leg restraints, and "violated his

4

civil rights under the patient bill of rights."  Plaintiff further alleges Moose Lake is obligated to

post wet floor signs, and is liable for his injuries pursuant to Minn. Stat. § 3.736 for failing to do

so.  Finally, Plaintiff alleges "MSH-Moose Lake is responsible for the injuries, loss of wages,

and failing to post wet floor signs and utilizing a wax that becomes slippery and dangerous under

the smallest wet conditions."  (Am. Compl., p. 9.)  In addition to declaratory judgment and

injunctive relief, Plaintiff requests $100,000 in compensatory damages jointly from Defendants

Ludeman, Tessneer, Erskine and Pingry, and lost wages of $154.80.  Plaintiff requests punitive

damages against the Doe Defendants.

The DHS Defendants filed a motion to dismiss, along with a memorandum of law, the

Affidavit of Sarah McGee, and various exhibits in support of the motion.  The DHS Defendants

move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)

and assert the following:  1) to the extent the suit is brought against Defendants in their official

capacities, it is barred by the Eleventh Amendment, and no exception applies here; 2) Plaintiff

did not specify a provision of the Americans with Disabilities Act, but assuming he alleges

violation under Title II of the ADA, 42 U.S.C. §12131-165, he has failed to demonstrate the

elements of a claim; 3) Plaintiff's claim under the ADA fails because his injury was temporary;

4) Plaintiff's claim under the ADA fails because he has not shown that he was excluded from

any service, program, or activity; 5) Title II of the ADA does not authorize suits against

Defendants in their individual capacities; 6) Plaintiff's Eighth Amendment claims fail because

the Eighth Amendment does not apply to civilly committed patients, and because he was given

prompt medical attention; 7) Plaintiff's § 1983 claims should be dismissed because Plaintiff did

not allege that the DHS Defendants were personally involved in the alleged misconduct; 8)

Defendants are entitled to qualified immunity against any award of damages; 9) Plaintiff's injunctive and declaratory judgment claims are moot because Plaintiff has been transferred to a different facility and is no longer subject to the alleged unlawful conduct; 10) the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

In response to Defendants' Motion to Dismiss, Plaintiff served and filed discovery requests, and indicated that he would seek to amend the complaint and correct any deficiencies after discovery. (Plaintiff's [first] Brief in Opposition to Defendants' Motion to Dismiss.) The DHS Defendants replied that discovery is inappropriate at this time because a 12(b)(6) motion to dismiss is based on the legal sufficiency of the complaint, and additional factual discovery would not alter the legal conclusion that Plaintiff's complaint fails to state a claim. (Defendants' Reply Memorandum in Support of Motion to Dismiss.) Plaintiff responded by filing Plaintiff's [second] Brief in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Second Brief"), wherein Plaintiff asserts that the DHS Defendants misrepresented certain facts in their motion to dismiss, particularly with respect to Defendants' Exhibit 2. Thus, Plaintiff concludes discovery is necessary at this time. Additionally, Plaintiff asserts that he needs discovery to show the DHS Defendants were aware of the conditions that caused his injuries. Finally, he alleges the DHS Defendants' failure to train and supervise John and Jane Does, failure to prevent or correct hazardous conditions, and deliberate indifference to the failure to carry out treatment prescribed by a physician violates the Constitution, the ADA, and state tort law. (Plaintiff's Second Brief at 13.) Plaintiff requests that if the Court was inclined to grant the motion to dismiss, that he

instead be allowed to voluntarily dismiss the action without prejudice.[5]

## II.    STANDARD OF REVIEW

The DHS Defendants move to dismiss Plaintiff's claims against them for failure to state a claim upon which relief may be granted, but have submitted material outside the pleadings for the Court's consideration.  Unless a court excludes matters outside the pleadings that have been presented to it, it must convert the motion to dismiss into a motion for summary judgment.  Fed. R. Civ. P. 12(d).  The Court finds that Plaintiff's federal claims should be dismissed on the face of the amended complaint; and the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  Therefore, the Court excludes the Affidavit of Sarah McGee and attached exhibits from consideration and will not convert the DHS Defendants' motion to dismiss into a motion for summary judgment.  See Little Gem Life Sciences LLC v. Orphan Medical Inc., – F.3d –, No. 07-3285, 2008 WL 3266664, at *2 (8th Cir. Aug. 11, 2008) (holding district court properly denied request to convert motion to dismiss into motion for summary judgment.)  Furthermore, the Court will treat Plaintiff's Second Brief as a motion for leave to amend the complaint, and treat the new facts and bases for his claims alleged therein as if they were contained in a proposed amended complaint.  See Hughes v. Banks, No. 07-2875, 2008 WL 4065874, at *1 (8th Cir. Sept. 3, 2008) (unpublished) (treating plaintiff's objections to Report and Recommendation as a motion for leave to file an amended complaint where objections

---

[5]  The Court perceives this request as an improper attempt by Plaintiff to avoid obtaining a "strike" under the PLRA if the Court finds that the complaint fails to state a claim upon which relief may be granted.  If Plaintiff had filed a request for a voluntarily dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2) without condition that the Court first determine that the complaint should be dismissed for failure to state a claim, the Court might have viewed Plaintiff's request differently.

reframed the bases for claims).

Federal Rule of Civil Procedure 12(b)(6) provides that a pleader may move to dismiss on the basis of failure to state a claim upon which relief may be granted. Upon consideration of a 12(b)(6) motion to dismiss, a court should liberally construe a pro se complaint. Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The court must take all well-pleaded allegations as true, and accord all reasonable inferences in the light most favorable to the nonmoving party. St. Croix Waterway Ass'n. v. Meyer, 178 F.3d 515, 519 (8th Cir. 1999). However, a plaintiff cannot rely on general and conclusory allegations to survive the motion to dismiss. Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235-36 (3d ed. 2004)). "Once a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" Bell Atlantic Corp., 127 S.Ct. at 1969 (quoting Sanjuan v. American. Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994).

Although the Moose Lake Doe Defendants have not been identified or served, the Court must screen the Complaint pursuant to 28 U.S.C. § 1915A, and dismiss any claims against them that are frivolous, malicious, fail to state a claim upon which relief may be granted, or claims in which plaintiff seeks monetary relief from defendants who are immune from such relief. See Eaton v. Maples, No. 1:07CV00042WRW(lead); 2008 WL 3911810, at *3 (E.D.Ark. Aug. 21, 2008) (screening and dismissing claims against Doe defendants). Similarly, the Court can dismiss at any time claims against the Mercy Hospital Doe Defendants for failure to state a claim

pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); see e.g. Brown v. Crittendorf County Sheriff's Dept.,

No. 3:07-CV-00083-SWW-BD, 2007 WL 2316493 (E.D.Ark Aug. 8, 2007).

After the opposing party has filed a responsive pleading, a party may amend its complaint

with written consent of the opposing party, or on leave of court.  Fed. R. Civ. P. 15.  A motion

for leave to file an amended complaint may be denied if the amendment is futile.  Amrine v.

Brooks, 522 F.3d 823, 833 (8th Cir. 2008).  A proposed change is futile if it advances a claim or

defense that is legally insufficient on its face.  Williams v. Little Rock Mun. Water Works, 21

F.3d 218, 225 (8th Cir. 1994).

## III.   LEGAL ANALYSIS

### A.   Plaintiff Has Failed To State An ADA Claim Against The DHS Defendants and the Moose Lake Doe Defendants In Their Individual Or Official Capacities.

Plaintiff, in the amended complaint, does not specify which section of the ADA he claims

the DHS and Moose Lake Doe Defendants have violated.  However, Plaintiff's Second Brief

indicates that the claim is brought pursuant to 42 U.S.C. § 12132.  The statute provides:

> Subject to the provisions of this subchapter, no qualified individual
> with a disability shall, by reason of such disability, be excluded
> from participation in or be denied the benefits of the services,
> programs, or activities of a public entity or be subjected to
> discrimination by any such entity.

Title II of the ADA "provides disabled individuals redress for discrimination by a 'public

entity.'"  Alsbrook, 184 F.3d at 1005, n.8.  The term "public entity," as defined by statute, does

not include individuals.  Id.  Thus, the public-entity limitation precludes ADA claims against

state employees in their individual capacities.  Randolph v. Rodgers, 253 F.3d 342, 348 (8th Cir.

2001).  Plaintiff's ADA claims against the DHS Defendants and the Moose Lake Doe

Defendants in their individual capacities should be dismissed.

The DHS Defendants also assert that the Eleventh Amendment bars Plaintiff's ADA claims against them in their official capacities.  The Eleventh Amendment guarantees nonconsenting states and their agencies that they may not be sued by private individuals in federal court.  Perry v. Missouri Dept. Of Corrections, No.4:05CV1384-DJS, 2007 WL 892460, at *3 (E.D.Mo. March 21, 2007).  However, "[w]hen Congress seeks to remedy or prevent unconstitutional discrimination, § 5 [of the Fourteenth Amendment] authorizes it to enact prophylactic legislation proscribing practices that are discriminatory in effect, if not in intent, to carry out the basic objectives of the Equal Protection Clause."  Tennessee v. Lane, 541 U.S. 509, 520 (2004).  In enacting Title II of the ADA, Congress intended to abrogate state sovereign immunity using its power to enforce the Fourteenth Amendment.  U.S. v. Georgia, 546 U.S. 151, 154 (2006).  However, Congress' power under § 5 is not unlimited.  Tennessee, 541 U.S. at 520.  To determine whether Congress had the power to abrogate sovereign immunity under § 5 in a particular case, courts must determine on a claim by claim basis:

> "(1) which aspects of the State's alleged conduct violated Title II;
> (2) to what extent such conduct also violated the Fourteenth
> Amendment; and (3) insofar as such conduct violated Title II but
> did not violate the Fourteenth Amendment, whether Congress'
> purported abrogation of sovereign immunity as to that class of
> conduct is nevertheless valid.

Georgia, 546 U.S. at 159.  Title II validly abrogates sovereign immunity when the conduct alleged actually violates the Fourteenth Amendment.  Id.

Thus, the first question the Court must address is which aspect of the State's alleged conduct violated Title II.  To state a claim under Title II, one must demonstrate: "(1) that he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in

question; and (3) he was excluded from the benefit due to discrimination based upon disability." Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999).

The ADA defines disability of an individual as someone with a "physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment."  42 U.S.C. § 12102(2).[6]  "Disability under the ADA requires permanent or long-term impairments, see 29 C.F.R. § Pt. 1630, App. § 1630.2(j), and impairments while recovering from surgery are not evidence of a permanent disability, see *Heintzelman v. Runyon*, 120 F.3d 143, 145 (8th Cir. 1997)."  Gutridge v. Clure, 153 F.3d 898, 901-02 (8th Cir. 1998); see also Adams v. Citizens Advice Bureau, 187 F.3d 315, 316-17 (2nd Cir. 1999) (finding three and a half month temporary injury does not substantially limit a major life activity under ADA).

In this case, Plaintiff was temporarily confined to a wheelchair on two occasions after he was treated for a dislocated knee.  Both periods of his recuperation were brief.  These temporary injuries do not qualify as disabilities under the ADA.  Because Plaintiff has not established a violation of Title II of the ADA, the Court need not address the remaining factors in determining whether Congress had the power under § 5 of the Fourteenth Amendment to abrogate sovereign immunity under the circumstances of this case.  Plaintiff's ADA claims against the DHS Defendants and Moose Lake Doe Defendants in their official capacities should be dismissed for failure to state a claim.

**B.      The DHS Defendants and the Moose Lake Doe Defendants Are Entitled to**

---

[6]      42 U.S.C. § 12102 was amended on September 25, 2008.

**Qualified Immunity Against Plaintiff's § 1983 Claims For Damages.**

In Plaintiff's Second Brief, he seeks to amend his complaint to allege that his claims regarding wheelchair confinement arise under the ADA and the Fourteenth Amendment, not the Eighth Amendment.  The DHS Defendants correctly argue that the Eighth Amendment does not apply to civilly committed patients.  "[B]ecause an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply."  Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004); Serna v. Goodno, No. Civ. 04-0615JMRSRN, 2005 WL 1324090, at *5 (D.Minn. June 3, 2005).  "The rights of patients in psychiatric hospitals more appropriately arise under the Fourteenth Amendment."  Revels, 382 F.3d at 875.  Thus, the Court will treat Plaintiff's Second Brief as a proposed amended complaint raising constitutional claims under the Due Process Clause of the Fourteenth Amendment.

However, the deliberate indifference standard of the Eighth Amendment remains applicable to civilly committed patients challenging the conditions of confinement under the Due Process Clause of the Fourteenth Amendment.  Senty-Haugen v. Goodno, 462 F.3d 876, 889 (8th Cir. 2006). Courts apply the "identical deliberate-indifference standard as that applied to conditions of confinement cases brought by convicts."  Beaulieu v. Ludeman, No. 07-CV-1535 JMR/JSM, 2008 WL 2498241, at *23 (D.Minn. June 18, 2008) (citations omitted).  Therefore, the Court will look to analogous Eighth Amendment cases.

### 1.    Qualified Immunity Standard

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory

12

or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The first inquiry in qualified immunity analysis is "whether the plaintiff's allegations establish a violation of the Constitution." Sherbrooke v. City of Pelican Rapids, 513 F.3d 809, 813 (8th Cir. 2008).  If there is no constitutional violation, the inquiry is complete.  Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th Cir. 2007).  If there is a constitutional violation, the Court inquires whether the constitutional right was clearly established at the time of the violation, such that a reasonable person would have known that his conduct violated a constitutional right.  Sherbrooke, 513 F.3d at 813.  "The contours of the constitutional right at issue 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right,' but '[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent.'" Jackson v. Federal Bureau of Prisons, Civ. No. 06-1347 (MJD/RLE), 2007 WL 843839, at *15, (D.Minn. Mar. 16, 2007) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)).

**2.    Eighth Amendment Standard**

The Eighth Amendment is violated by "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993) (citation omitted).  "To prevail on an Eighth Amendment claim, an inmate must prove both an objective element, which asks whether the deprivation was sufficiently serious, and a subjective element, which asks whether the defendant officials acted with a sufficiently culpable state of mind." Choate v. Lockhart, 7 F.3d 1370, 1373 (8th Cir. 1993).  Conditions of confinement can violate the Eighth Amendment if the conditions involve a wanton and unnecessary infliction of

13

pain.  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  The objective element is met where the

conditions of confinement pose a substantial risk of serious harm.  Simmons v. Cook, 154 F.3d

805, 807 (8th Cir. 1998).  The subjective element is met when a defendant acts with deliberate

indifference to an inmate's health or safety.  Farmer v. Brennan, 114 S.Ct. 1970, 1978-79 (1994).

A defendant's intentional interference with prescribed treatment may rise to the level of

deliberate indifference.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  Negligence does not

rise to the level of a constitutional violation.  Id. at 106.

### 3.    Analysis

In his amended complaint, Plaintiff did not allege personal involvement by any of the

DHS Defendants in the alleged constitutional violations.  Personal involvement is essential to the

cause of action because respondeat superior does not apply to § 1983 actions.  Brown v.

Wallace, 957 F.2d 564, 566 (8th Cir. 1992).  However, in his Second Brief, Plaintiff alleges the

DHS Defendants' failure to train and supervise John and Jane Does, failure to prevent or correct

hazardous conditions, and deliberate indifference to the failure to carry out treatment prescribed

by a physician violates the Constitution.  The Court will address these arguments as if they were

contained in a proposed amended complaint.

The first issue is whether the unmarked wet and slippery floors are a condition of

confinement that poses a substantial risk of serious harm.  In similar cases, courts have

concluded that slippery or wet floors do not pose a substantial risk of serious harm in violation of

the Eighth Amendment.  See Curry v. Federal Bureau of Prisons, 05-CV-2781 PJS/JSM, 2007

WL 2580558, (D.Minn. Sept. 5, 2007) (collecting cases).  Even where the wet floors were

unmarked and defendants were aware of the slippery conditions, the failure to prevent injury or

post wet floor signs does not rise above negligence, and is not a constitutional violation.  See

Carter v. Ark. Dept. of Corrections, No. 5:08CV00222 JMM/BD, 2008 WL 4102719, at *3

(E.D.Ark. Sept. 3, 2008) (finding wet floor does not raise a conditions of confinement claim).

The claims against the Moose Lake Doe Defendants based on the wet and slippery floor

conditions fail to state a violation of the Eighth Amendment or, under the same standard, the Due

Process Clause of the Fourteenth Amendment.  Therefore, the "wet floor" claims against the

Moose Lake Doe Defendants should be dismissed pursuant to 28 U.S.C. § 1915A.  Furthermore,

it would be futile for Plaintiff to amend his complaint to allege the DHS Defendants violated the

Constitution by failing to train or supervise the Moose Lake Doe Defendants concerning the wet

floor conditions, or otherwise prevent and correct the wet floor conditions.  In order for the DHS

Defendants to be liable for failure to train and supervise, Plaintiff must first adequately allege

that an employee caused a deprivation of constitutional rights.  Tlamka v. Serrell, 244 F.3d 628,

635 (8th Cir. 2001).  Thus, the "wet floor" claims against the DHS Defendants should be

dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

The next issue is whether the Moose Lake Doe Defendants or the DHS Defendants

violated Plaintiff's constitutional rights by not providing him with a wheelchair accessible room

and by forcing him to share a wheelchair.  Plaintiff alleges that not having a wheelchair

accessible room forced him to walk five to ten feet on his injured knee from the entrance of his

room to his bed.  Because he had to share a wheelchair, Plaintiff had to walk up to 500 feet to

retrieve the wheelchair or wait for someone to retrieve it for him.

The Court finds that forcing Plaintiff to walk five to ten feet with a sore knee, or even

five hundred feet if he did not wish to wait for someone to retrieve his wheelchair after

15

borrowing it, is not objectively serious enough to allege a constitutional violation.  See

Ostendorf, 2002 WL 31085085, at *10 (finding failure to provide a wheelchair recommended by

a doctor for a prisoner with back pain did not rise above negligence); but cf. Simmons v. Cook,

154 F.3d 805, 808 (8th Cir. 1998) (depriving paraplegic inmates of wheelchair for thirty-two

hours, which prevented them from reaching food or toilet, constitutes deliberate indifference in

violation of the Eighth Amendment).  Likewise, Plaintiff's claims that defendants violated his

Eighth Amendment rights by forcing him to climb stairs to perform his assigned work of

sweeping and mopping the floors after his work restrictions from his injury had expired should

be dismissed for failure to allege serious risk of harm to his health or safety in violation of the

Constitution.  See Marlin v. Raper, No.2:06CV004 SWW/BD, 2007 WL 779710, at *5 (E.D.Ark.

March 13, 2007) (finding no constitutional violation where inmate was forced to work while in

wheelchair where medical profile did not indicate any labor restrictions.)

      Plaintiff also alleges that the second time he dislocated his knee, the Moose Lake Doe

Defendants provided him with a very small wheelchair, and when he complained, told him to

walk behind the wheelchair.  Plaintiff alleges the treating physician prescribed that he use a

wheelchair if unable to use crutches.  Plaintiff has not alleged that he actually did not fit into the

wheelchair, but only that it was very small.

      Even giving Plaintiff every benefit of the doubt by assuming that he was forced to walk

behind the wheelchair because he did not fit in it, and assuming that this was a serious enough

risk to his health to constitute an Eighth Amendment violation, the Court finds that the

deprivation was not sufficient to overcome the subjective element of qualified immunity.  The

subjective element requires that the defendants knew or should have known that their conduct

violated a clearly established constitutional right.  Tyler v. Barton, 901 F.2d 689, 691 (8th Cir.

1990).  Forcing a person to use a wheelchair as a walker, as opposed to sitting in it, where a

doctor prescribed use of crutches or a wheelchair is not such a clearly established constitutional

violation that the defendants should have known their conduct violated the Constitution.

Although not ideal, Plaintiff could use the handles of a wheelchair, instead of crutches, to hold

himself steady while supporting his weight on one leg.  Therefore, these claims against the

Moose Lake Doe Defendants should be dismissed based on qualified immunity pursuant to 28

U.S.C. § 1915A.

Plaintiff's proposed amended complaint against the DHS Defendants under the

Fourteenth Amendment for deliberate indifference to his medical needs is futile because, even if

Plaintiff could establish that the DHS Defendants were personally aware of the deprivation of a

suitable wheelchair, the constitutional right was not so clearly established that the defendants

should have known the conduct violated the Constitution.  Therefore, the DHS Defendants are

also entitled to qualified immunity, and Plaintiff's claims against the DHS Defendants should be

dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff's remaining constitutional claim is against certain Moose Lake Doe Defendants

for shackling his legs during transportation from the hospital back to MSH-Moose Lake.

Plaintiff alleges he fell when getting into the van wearing leg shackles, causing pain to his

already injured knee and a gash on his elbow.  Wanton and gratuitous infliction of unnecessary

pain without penological justification violates the Eighth Amendment.  Hope v. Pelzer, 536 U.S.

730, 737-38 (2002).  In this case, even assuming the conduct violates the Eighth Amendment

standard as applied to the Fourteenth Amendment, Defendants are entitled to qualified immunity.

17

The risk of serious harm to the Plaintiff was not so obvious that the defendants knew or should have known that their conduct violated the Constitution, nor was the use of leg shackles to transport a civilly committed patient so obviously lacking in justification as to make Defendants aware that their conduct constituted wanton infliction of pain.  See Haslar v. Megerman, 104 F.3d 178, 180 (8th Cir. 1997) (finding practice of shackling hospitalized inmates to beds did not violate Eighth Amendment).  Therefore, Plaintiff's claims against the Moose Lake Doe Defendants (and the DHS Defendants, assuming Plaintiff seeks to hold them liable for this conduct) for using leg shackles to transport him from the hospital into a van to return to Moose Lake should be dismissed pursuant to 28 U.S.C. § 1915(A) because Defendants are entitled to qualified immunity.

      **C.**      **Plaintiff's Request For Declaratory and Injunctive Relief Is Moot Because Plaintiff Was Transferred To A Different Facility.**

In his amended complaint, Plaintiff seeks injunctive relief "requiring defendants to improve the safety of wet floors by enforcing postings of wet floor signs when floors are wet or slippery, and requiring MSH-Moose Lake to conform to the Uniform Bldg Codes and the ADA." (Amended Complaint, p. 10).  At the time Plaintiff filed his amended complaint, he was a pretrial detainee at Washington County Jail.  (Amended Complaint, ¶ 3.)  Therefore, he was transferred from Moose Lake to a different facility after the conduct alleged in the complaint occurred at MSH-Moose Lake.  The DHS Defendants argue Plaintiff's claims for declaratory and injunctive relief are moot as a result of the transfer.

Claims for equitable and injunctive relief are moot when the plaintiff is no longer subject to the conditions of confinement of which he complains.  Senty-Haugen v. Goodno, No. Civ. 04-

18

1077ADMJJG, 2005 WL 2917464, at * 3 (D.Minn. Nov. 4, 2005).  Therefore, Plaintiff's claims

for declaratory and injunctive relief should be dismissed as moot.

> **D.     The Claims Against the Mercy Hospital Doe Defendants Should Be**
> **Dismissed Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).**

Plaintiff has not alleged any misconduct by the Mercy Hospital Doe Defendants in the

amended complaint, or in his second brief in opposition to the motion to dismiss.  The only

references to the Mercy Hospital Doe Defendants in the amended complaint are as follows:

> The defendants John and Jane Does; are unknown medical persons
> employed at Mercy Hospital.  They are sued in their official and
> individual capacities.  The defendants job duties include but not
> limited to, examining emergency room patients and taking,
> ordering, and/or reviewing Xrays of patients.  (Am. Compl. ¶ 8.)
>
> Upon the plaintiffs arrival at Mercy hospital, Dr. Doe, Emergency
> room Dr., examined patient and ordered Xrays.  Upon the Xrays
> returning and being reviewed, Dr. Doe diagnosed the plaintiff with
> a dislocated right patella.  As treatment prescribed, Dr. Doe, placed
> plaintiffs knee back in place, placed plaintiff in a knee brace and
> confined him to a wheelchair "w/c"until seen by an orthopedic
> specialist and no work restrictions.  The plaintiff was released from
> the hospital back to MSH-Moose Lake.  (Am. Compl. ¶ 15.)
>
> Upon the plaintiffs arrival to Mercy hospital, [on a later date] Dr.
> Jane Doe examined plaintiff and diagnosed plaintiff with a
> dislocated patella, w/c confinement if unable to use crutches, and
> no work restrictions.  (Am. Compl. ¶ 23.)

For relief, Plaintiff requests punitive damages against "John and Jane Does" in the sum of

$10,000 each.  (Am. Compl., p. 10.)  However, Plaintiff has not asserted the Mercy Hospital Doe

Defendants did anything wrong, and the Court can not glean any legal claim against the Mercy

Hospital Doe Defendants from the amended complaint or from the facts and arguments

otherwise presented by Plaintiff.  Therefore, Plaintiff's claims against the Mercy Hospital Doe

Defendants should be dismissed for failure to state a claim pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii).

     **E.**    **Comity Dictates That The Court Decline To Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims.**

A federal court may decline to exercise supplemental jurisdiction over state law claims if

the court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).

As a matter of comity, federal courts ordinarily dismiss state claims without prejudice to avoid

needless decisions of state law.  <u>American Civil Liberties Union v. City of Florissant</u>, 186 F.3d

1096, 1098–99 (8th Cir. 1999).  Therefore, the Court declines to exercise jurisdiction over

Plaintiff's remaining state law claims.

**IV.**    **RECOMMENDATION**

Based upon all the files, records and proceedings herein, IT IS HEREBY

RECOMMENDED that:

1.    the DHS Defendants' Motion to Dismiss be GRANTED (#22) and the ADA and Section 1983 claims against the DHS Defendants be dismissed with prejudice;

2.    Plaintiff's ADA and Section 1983 claims against the Moose Lake Doe Defendants be dismissed with prejudice pursuant to 28 U.S.C. § 1915A;

3.    Plaintiff's Section 1983 claims against the Mercy Hospital Doe Defendants be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

4.    Plaintiff's claims for declaratory and injunctive relief be dismissed as moot;

5.    Plaintiff's state law claims be dismissed without prejudice.

DATED:  October 8, 2008       *s/ Franklin L. Noel*
                                 FRANKLIN L. NOEL
                                 United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing
with the Clerk of Court and serving on all parties, on or before **October 28, 2008**, written

objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words.  A judge shall made a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.